ISHEE, J.,
for the court:
¶ 1. In 1993, George Michael Bass pleaded guilty in the Rankin County Circuit Court to murder, burglary of an occupied dwelling, and grand larceny. He was sentenced to life imprisonment for murder, fifteen years for burglary of an occupied dwelling, and five years for grand larceny, with all sentences to run consecutively in the custody of the Mississippi Department of Corrections (MDOC). Bass later filed a motion for post-conviction relief (PCR) that was denied by the circuit court. The Mississippi Supreme Court upheld the circuit court’s denial. Bass filed another PCR motion in 2013 challenging his guilty plea to murder. The circuit court dismissed it as procedurally barred. Bass now appeals on the grounds that the circuit court erred in its determination that his PCR motion was procedurally barred since he alleges he is entitled to DNA-evidence testing, and, therefore, is except *448 ed from the bar. Finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. On February 19,1992, Bass asserts that he went to the home of Modeen Hudson in Pearl, Mississippi, looking for his father. Bass claims he was under the impression that his father was borrowing money from Hudson so that Bass could return to his home in Cameron, Louisiana. However, upon arriving at Hudson’s door, Bass states that he observed his father standing over Hudson’s body. Bass testified that Hudson was lying on the floor with a black cord wrapped around her neck and a pool of blood under her head.
¶ 3. Bass helped his father wrap Hudson’s dead body in a sheet and place the body in the trunk of her car. Bass admits that he then went back inside the home and raided the silver cabinet. He also took Hudson’s purse, which he alleges his father initially took from her home and placed on the hood of her car. Bass then placed the purse inside Hudson’s car and drove away in her car. He later used Hudson’s gas station credit card to fill the car with gas. After filling the car’s gas tank, Bass drove the car to Louisiana, where he unloaded and left Hudson’s body near a beach. Authorities in Louisiana located Bass in Hudson’s vehicle several days later, and Bass was indicted for capital murder.
¶ 4. In 1993, he agreed to plead guilty to a lesser charge of murder, with a recommended sentence of life in prison so as to avoid the death penalty. He also pleaded guilty to grand larceny and burglary of an occupied dwelling. Prior to the circuit court accepting his guilty plea, the circuit judge questioned Bass extensively as to his understanding of his choices and their consequences, including the recommended sentences for each crime.
¶ 5. The circuit judge then asked the State to review with Bass the evidence it had against him for the crime of murder. The State told the circuit judge that it had a sworn statement from a man named Steward Felice, who was in prison with Bass after he was arrested in Louisiana following the crime. Felice stated that while he and Bass were in prison together, Bass told him that on the night in question, he and his father went to Hudson’s house together and that Bass was in the house when his father killed Hudson. Felice’s statement directly contradicted Bass’s claim that he arrived at the house after Hudson was already dead. The State further noted that it expected to prove that Bass and his father went to the house with the intention of robbing Hudson and that the murder took place during the commission of the robbery.
¶ 6. Bass disagreed with the State’s proffer of evidence. In closing, the circuit judge asked Bass to explain to him what had happened on the night in question to ensure that Bass was actually guilty of the crimes to which he was pleading.
¶ 7. Bass recounted the events of the evening in question. The circuit judge accepted his guilty plea. The judge then sentenced Bass to life imprisonment for murder, fifteen years for burglary of an occupied dwelling, and five years for grand larceny. The sentences were ordered to run consecutively, all in the custody of the MDOC.
¶ 8. Bass later filed a PCR motion alleging ineffective assistance of counsel and error surrounding pretrial circumstances. The circuit court denied the motion, and the supreme court upheld the denial in Bass v. State, 696 So.2d 1069 (Miss.1997).
¶ 9. In April 2013, Bass filed another PCR motion. Therein, he asked the circuit court to review his case and allow for *449 new DNA-evidence testing that was not previously available at the time of his conviction and which he claims would contradict his guilty plea to murder. The circuit court denied the motion as being procedurally barred. Bass now appeals.
DISCUSSION
¶ 10. Mississippi Code Annotated section 99-39-5 (Supp.2013) governs PCR motions. The statute provides that a prisoner has three years within which to request post-conviction relief. After that time, only certain cases are excepted from the procedural bar. Exceptions to the three-year statute of limitations are as follows:
That there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of [the petitioner’s] conviction or sentence or that [the petitioner] has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence; or [t]hat, even if the petitioner pled guilty or nolo contendere, or confessed or admitted to a crime, there exists biological evidence not tested, or, if previously tested, that can be subjected to additional DNA testing that would provide a reasonable likelihood of more probative results, and that testing would demonstrate by reasonable probability that the petitioner would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution. Likewise excepted are those cases in which the petitioner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked. Likewise excepted are filings for post-conviction relief in capital cases which shall be made within one (1) year after conviction.
Miss.Code Ann. § 99 — 39—5(2)(a)(i)—(ii).
¶ 11. Bass claims the portions of the statute referencing DNA testing are applicable to his case and warrant his PCR motion being deemed an exception to the time-bar. Bass asserts that DNA testing is available now that was not available at the time of his court proceedings in 1993. He requests that fingerprints on the cord used to strangle Hudson and fingernail scrapings recovered from Hudson’s body be tested and compared to his DNA to exonerate him of the crime of murder.
¶ 12. Section 99 — 39—5(2)(a)(ii) provides that an untimely PCR motion may be excepted if the “DNA testing ... would demonstrate by reasonable probability that the petitioner would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution.” Here, even if DNA testing were to be completed and the fingerprints and fingernail scrapings did not match Bass’s DNA, it would not show by any reasonable probability that Bass’s guilty plea would not have been accepted or that he would have received a lesser sentence.
¶ 13. In order for a guilty plea to be accepted, a factual basis for the plea must be established under which the prosecution could prove that the accused committed the crime charged. Gaskin v. State, 618 So.2d 103, 106 (Miss.1993). “[The] factual basis may be formed by any facts presented before the court or otherwise in the record before the court.” Id. (citation omitted). In an effort to avoid a trial for capital murder, whereby he would face the death penalty, Bass entered a *450 guilty plea for the lesser charge of murder and told the circuit court his version of the events that took place on the night in question. He stated that Hudson was already on the floor in a pool of blood by the time he arrived at her house. The State, however, proffered contradictory evidence from Felice’s statement that Bass was inside the house when the murder took place and that he and his father went to Hudson’s house together with the intention of robbing her. Even if the DNA evidence reflected that the DNA matched Bass’s father and not Bass, it does not negate the contradictory evidence showing Bass may have been inside the house when the murder took place. It also does not show that Bass was not involved in the murder. Bass admitted that he wiped away all of his fingerprints from the house before leaving in Hudson’s car. This could have included the cord used in the murder. Furthermore, evidence that there were two people present in the house but that only one person’s DNA is reflected in DNA-evidence testing does not necessarily negate the other person’s involvement in the crime. We cannot say that the circuit court did not have sufficient evidence before it to conclude that a factual basis existed under which Bass may have been found guilty of murdering Hudson.
¶ 14. Furthermore, Bass knew that part of the plea bargain included the State’s recommendation of a life sentence for the crime of murder in exchange for removing capital murder, and the death penalty, from the realm of possibilities. Hence, we cannot find that favorable results from DNA-evidence testing would have resulted in a lesser sentence for Bass. The circuit court imposed the State’s recommendation — a recommendation of which Bass was aware and to which he agreed. Bass reaped the benefits of a plea negotiation. His guilty plea was properly received, and he was sentenced as provided for in the plea negotiation. DNA testing would have borne no consequence on Bass’s conviction or sentence even if it had been available at the time of his conviction. Hence, his PCR motion is not excepted from the procedural bar, and the circuit court properly dismissed it.
¶ 15. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.